18-339-cr
United States v. Asmodeo

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of March, two thousand nineteen.

PRESENT:   GUIDO CALABRESI
                    CHRISTOPHER F. DRONEY,
                                *Circuit Judges*,
                    STEFAN R. UNDERHILL,
                                *Chief District Judge.* *

_____

UNITED STATES,

                                        *Appellee*,

                        v.                                                          No. 18-339-cr

JOHN ASMODEO,

                                *Defendant-Appellant*.

_____

 FOR APPELLANT:                          COLLEEN P. CASSIDY, Federal Defenders of
                                                        New York, Inc., New York, NY

---

\* Chief Judge Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

FOR APPELLEE:                                    MARCIA COHEN Assistant United States Attorney (Lauren Schorr, Daniel B. Tehrani, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman United States Attorney for the Southern District of New York, New York, NY

Appeal from the United States District Court for the Southern District of New York (Briccetti, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court entered on March 7, 2017, and September 6, 2017, are **AFFIRMED.**

Defendant-Appellant John Asmodeo appeals from the district court's orders dated March 7, 2017, and September 6, 2017, denying his motion to suppress evidence. On appeal, Asmodeo contends that certain evidence should have been excluded as the product of the government's illegal search of his home. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

On April 22, 2014, law enforcement officials of the United States Department of Homeland Security ("DHS") applied for a warrant to search the residence at 166 See Avenue, Mahopac, New York, which was affiliated with an Internet Protocol ("IP") address that had been used to download child pornography. A Justice of the Court of the Town of Carmel, New York, issued a warrant to search the residence, identified as a "2 story multi family home with brick on the bottom and vinyl siding on top with an entrance in the front and side," and to seize a number of electronic devices and documents. App'x at 31. The home at 166 See Avenue had two units, an upstairs apartment and a downstairs apartment. Later, it was determined that Kelly Whelan lived in the second floor apartment, while her nephew, the defendant John Asmodeo, lived in the first floor apartment. The warrant did not describe which unit could be searched. The affidavit supporting the issuance of the warrant identified three IP addresses, none of which was the IP address identified in the warrant, and identified Whelan as the subscriber of one of the addresses. Neither the affidavit nor the warrant mentioned Asmodeo by name.

The following day, federal and local law enforcement officers executed the warrant at 166 See Avenue. First, they entered the second-floor apartment of Kelly Whalen and

then proceeded to search the first-floor apartment of Asmodeo. Upon finding evidence of child pornography on Asmodeo's computer, the officers arrested him.

At the Town of Carmel police station, DHS Special Agent Christopher McClellan conducted a videotaped interrogation of Asmodeo. The agent gave a *Miranda* warning and Asmodeo stated that he was not willing to waive his rights. Nonetheless, McClellan continued to question him, and he eventually disclosed substantial information concerning his involvement with child pornography.

During the interview, Asmodeo disclosed that his devices contained child pornography downloaded from the internet. He also described two videos that he filmed and had stored on his computer. Asmodeo filmed the first video of himself having sexual relations with his "friend Jess" when, he said, he was sixteen years old and she was fourteen (the "Jess Video"). App'x at 614. He told McClellan that the Jess Video could be found on his computer in a folder entitled "girls," and repeatedly denied having shared it with any person other than the victim in the video. Asmodeo stated that he filmed the second video using a hidden camera to record the nine- or ten-year-old daughter of a friend changing into and out of a bathing suit in the bathroom. DHS Supervisory Special Agent John Mirandona later conducted a forensic search of Asmodeo's electronic devices, looking specifically for the video filmed in the bathroom. The search revealed five videos of a ten-year-old girl changing in the bathroom filmed on separate occasions (the "Bathroom Videos").

The search also revealed more than 3,000 pornographic images and 20 pornographic videos of children, downloaded from the internet and stored on Asmodeo's devices.

Asmodeo was first charged in New York state court, and then, on February 3, 2015, the government filed a criminal complaint in the Southern District of New York, charging Asmodeo with attempted sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e), in relation to the Bathroom Videos, and receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and (b)(1), in relation to the images and videos downloaded from the internet. On June 1, 2015, an indictment was returned charging Asmodeo with one count of attempted sexual exploitation of a child in connection with the Bathroom Videos and one count of receipt and distribution of child pornography in connection with the internet images and videos.

In February 2016, Asmodeo moved to suppress both the evidence seized from his house and his post-arrest statements to McClellan. On June 30, 2016, about one month before the court was scheduled to hear those motions, DHS Special Agent Steven Mullen and Detective Sergeant Michael Nagle of the Carmel Police Department interviewed Eve

3

Condon, the mother of Asmodeo's son. Nagle learned about Condon and her son through police reports concerning unrelated child sexual and domestic abuse incidents. He first contacted Condon shortly after Asmodeo was arrested in order to arrange an interview of her son to determine if he had been exposed to the child pornography found in Asmodeo's home. A few minutes after Nagle and Mullen concluded the June 2016 interview, Condon called to give them a compact disk she had located containing a copy of the Jess Video (the "CD"). Later review of the CD revealed that Asmodeo was twenty years old at the time it was filmed and the victim was twelve.

On July 27, 2016, a grand jury returned a superseding indictment charging Asmodeo with one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), in relation to the Jess Video on the CD. The government advised the court that it had decided not to defend the search of Asmodeo's home and electronic devices, and would not offer the evidence obtained from the search or the defendant's post-arrest statements at trial, thereby mooting the February 2016 suppression motions. The government also advised the court that the two counts in the superseding indictment were different from the ones in the original indictment. The new counts related to the Jess Video, and not the Bathroom Videos or the internet images and videos.

Asmodeo then moved to suppress the CD of the Jess Video as the fruit of the poisonous tree of the illegal search. The court held a hearing on the motion in January 2017. Mirandona testified that during his forensic search of Asmodeo's devices, he used keywords that are "intrinsically indicative of child pornography," App'x at 368, and did not use the search term "girls." He testified that he either did not see the Jess Video or that, if he did see it, it would have been "of less interest," App'x at 392, because he was focused on finding images of prepubescent children, and the victim in the Jess Video appeared to be a teenager.

Mullen and Nagle also testified about their June 2016 interview with Condon. Mullen testified that they requested the interview to ask her to describe Asmodeo's apartment and other general questions. Mullen also testified that

> At almost the conclusion of the interview, Ms. Condon advised us that . . . [t]here had been some infidelity between them. And at the end, she said [Asmodeo] gave her a CD and said this is basically what I was doing while we were together, and she [told us] . . . she would be willing to turn it over to us if she could find it.

App'x at 446. Mullen and Nagle both testified that it was Condon who first mentioned

4

the existence of the CD. Mullen asked Condon to call them if she found the CD, and then Mullen and Nagle left. Two to three minutes later, Condon called Nagle to tell him that she had found the CD, and Mullen and Nagle returned to her house to pick it up.

On March 7, 2017, the district court issued an oral decision denying the motion to suppress. The court rejected the government's argument that the CD was obtained from an independent source, but held that the CD was "too attenuated to warrant suppression." App'x at 747. The court assumed, without deciding, that the original search was conducted in violation of the Fourth Amendment. It found, however, that this illegal search of Asmodeo's apartment and electronic devices was "neither purposeful nor flagrant" and instead was the "result of sloppiness and laziness." App'x at 744-45. It further found that the 2016 discovery of the CD was remote in time from the 2014 search and that Condon's voluntary production of the CD was an intervening event that broke the causal chain.

On May 1, 2017, defense counsel requested that the court reopen the suppression hearing to examine Mirandona and other government witnesses concerning whether other computer evidence found in the search revealed the Jess Video. The court reopened the suppression hearing on June 13, and heard further evidence. On September 6, 2017, the court issued an oral decision adhering to its prior ruling because the new evidence did not alter its conclusion that the discovery of the CD was too attenuated from the illegal search to be considered tainted fruit of the search.

Asmodeo and the government entered into a conditional plea agreement under which he agreed to waive his appellate rights except with respect to the denial of the motion to suppress. Asmodeo waived his right to indictment and pleaded guilty to Count One of a superseding information, charging sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e) in connection with the CD (containing the Jess Video). On January 31, 2018, the court sentenced him to the mandatory minimum sentence of 15 years' imprisonment, to be followed by 10 years' supervised release.[1]

## DISCUSSION

On appeal, Asmodeo contends that the discovery of the CD was not sufficiently attenuated from two instances of allegedly illegal conduct of the government: (1) the search of Asmodeo's home and electronic devices, and (2) the interrogation of Asmodeo at the police station. Before reviewing the merits of the appeal, we address the

---

[1] The district court also dismissed all counts of both indictments.

government's threshold contention that Asmodeo forfeited the latter argument concerning the interrogation.[2]

I.

The government contends that Asmodeo forfeited the argument that the CD is the fruit of the poisonous tree of the allegedly illegal interrogation by failing to raise it below. In his reply brief on appeal, Asmodeo argues not only that the discovery of the CD is the product of the interrogation, but also that the flagrancy of the interrogation bears on the flagrancy of the search, because the interrogation was itself a fruit of the search.

The government is correct that Asmodeo's briefing on the motion to suppress before the district court focuses principally on whether the discovery of the CD derived from the search and makes only one reference to disclosing the Jess Video during the interrogation. Asmodeo also did not argue below that the flagrancy of the interrogation bears on the flagrancy of the search. Accordingly, Asmodeo forfeited those arguments for appellate review.[3]

Where a criminal defendant forfeited an argument by failing to raise it below, we may still review the district court's decision for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993). As described more fully in the following section, Asmodeo's statements to McClellan did not lead investigators to Condon or give them any reason to believe that she held relevant evidence. Therefore, it was not plain error for the district court to conclude that the discovery of the CD was too attenuated from the allegedly unconstitutional conduct to warrant suppression.

There is also little support in decided cases for Asmodeo's contention that the government's conduct following an illegal search may exacerbate the flagrancy of the search for the purpose of attenuation analysis. The only decision he cites to support that contention stands for an entirely different proposition. *See United States v. Reed*, 349 F.3d 457, 465 (7th Cir. 2003) ("Conducting a custodial interrogation after an illegal arrest in a congenial and non-threatening manner does not in and of itself disprove that the police

---

[2] While the government uses the term "waiver" in its brief, it argues in substance that Asmodeo *forfeited* the argument by failing to raise it, rather than intentionally waiving it. *See United States v. Brown*, 352 F.3d 654, 663 (2d Cir. 2003) ("Waiver—the intentional relinquishment or abandonment of a known right—extinguishes an error and obviates plain error review. Forfeiture—the failure to make the timely assertion of a right—does not." (internal quotation marks and citations omitted)).

[3] Asmodeo did, however, address the interrogation to the extent that it formed a link in the causal chain leading the government from the initial search to the interview with Condon. We address that argument below.

acted in bad faith."). In the absence of existing relevant controlling or persuasive authority, it was not *plain* error for the district court here to focus on the flagrancy of the search and not the interrogation.

## II.

Asmodeo invokes the "fruit of the poisonous tree" doctrine to argue that the government's allegedly illegal search led it to interview Condon and thus tainted the evidence it obtained from her. On appeal from the denial of a motion to suppress, we review "legal conclusions de novo," "findings of fact for clear error," and "mixed questions of law and fact" de novo. *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) (internal quotation marks and citations omitted).

To determine whether evidence is sufficiently attenuated from an illegal search to be admitted, we first consider "the purpose and flagrancy of the official misconduct." *Utah v. Strieff*, 136 S. Ct. 2056, 2062 (2016) (quoting *Brown v. Illinois,* 422 U.S. 590, 604 (1975)). We also look to "the presence of intervening circumstances" and the "'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search." *Id.* (quoting *Brown v. Illinois,* 422 U.S. at 603-04).

The district court assumed, without deciding, that the search of Asmodeo's home was conducted illegally because the warrant did not specify the apartment to be searched—although it identified the residence as a multifamily home—and contained multiple errors, including identifying a different IP address in the warrant from the ones identified in the affidavit supporting the warrant. Asmodeo also argues that the officers acted flagrantly in presenting the warrant application to a town court justice, who may have been less likely to catch the mistakes than a federal magistrate judge. The district court concluded that the problems with the warrant were "neither purposeful nor flagrant" and instead were the "result of sloppiness and laziness." App'x at 744-45. In light of the "substantial social costs" of applying the exclusionary rule, *Hudson v. Michigan*, 547 U.S. 586, 594 (2006) (quoting *United States v. Leon,* 468 U.S. 897, 907 (1984)), we "favor[] exclusion only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant," *Utah v. Strieff*, 136 S. Ct. at 2063. In view of the many errors in the warrant, we cannot say that the officers' misconduct was insignificant or that suppression would not deter similar conduct.

However, any deterrent value of suppression is significantly diminished because an intervening circumstance disrupted the causal chain between the search and the discovery of the CD. *See Brown v. Illinois*, 422 U.S. at 598 (observing that "an intervening

7

independent act of a free will" may "purge the primary taint" of an illegal search) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)).  The district court concluded that Condon's unanticipated production of the CD was an intervening circumstance that weighed against suppression.  That conclusion is amply supported by the record.  Nagle first learned of Condon's existence not through Asmodeo, but through an unrelated police report.  The district court credited Nagle's and Mullen's testimony that they interviewed Condon not to find evidence of Asmodeo's illegal activities, but instead to learn more about his background and residence, and Asmodeo does not challenge that credibility finding. It was Condon who first brought up the existence of the CD, and neither Nagle nor Mullen knew that Condon had a copy of the Jess Video.  The officers left Condon's house without the CD, instructing her to call if she found it.  She did so minutes later, and the officers returned to pick it up.  From those facts, there is no question that the district court did not err in concluding that Condon's statement was voluntary in the sense that it was not coerced or obtained by fear.  *See United States v. Snype*, 441 F.3d 119, 135 (2d Cir. 2006) (concluding that host's voluntary consent to search her apartment for evidence of guest's crime was intervening act of free will sufficient to purge taint of illegal search that had occurred only twenty minutes before because the fearful atmosphere created by the search had dissipated).

The fact that Asmodeo described the Jess Video during the interrogation and told McClellan where to find it in his electronic files is not sufficient to reject the district court's conclusion that the search did not lead law enforcement to seek a copy of the Video from Condon.  In fact, during the interrogation, Asmodeo specifically and repeatedly denied having given the Jess Video to anyone other than the victim.  Accordingly, Condon's voluntary production of the CD constitutes an intervening circumstance weighing against suppression, as the district court found.

The long delay between the search and discovery of the CD also suggests a weak causal connection between the two events and undermines the potential deterrent value of suppression.  Law enforcement officers searched Asmodeo's apartment on April 23, 2014.  Nagle and Mullen interviewed Condon more than two years later, on June 30, 2016.  The significant gap between those events supports the district court's finding that the search did not directly lead to the interview because, if the search or interrogation pointed law enforcement officers to evidence in Condon's possession, they likely would have immediately scheduled the interview or requested the evidence during their initial meeting with her in May 2014.

Weighing all three factors together we conclude that the district court did not err in finding that the discovery of the CD was sufficiently attenuated from the illegal search to permit its admission.

8

\* \* \*

We have considered Asmodeo's remaining arguments and find them to be without merit. We **AFFIRM** the March 7, 2017 and September 6, 2017 orders of the district court denying the Asmodeo's motion to suppress.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9